UNITED STATES DISTRICT COURT　　　　　　　　　NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
　　　　　　　　　　　　　　　　　　　　　　　　:
FRANK TRIFILIO,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　04-CV-5080 (ERK)(MDG)
　　　　　　　　　Plaintiff,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM & ORDER**
　　　　　　　-against-　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
JO ANNE B. BARNHART,　　　　　　　　　　　:
Commissioner of Social Security　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendant　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------------X

KORMAN, Chief Judge.

The principal issue in this Social Security case is whether the Commissioner of Social Security (the "Commissioner") properly determined that plaintiff, Frank Trifilio, was not disabled. The ALJ concluded that, although Mr. Trifilio could not return to his past relevant work due to his impairments, he retained residual functional capacity to perform light work which exists in significant numbers in the national economy. The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## BACKGROUND

**1.** **Procedural History**

On April 30, 2002, plaintiff Frank Trifilio applied for Supplemental Security Income benefits (hereinafter "SSI"), alleging an onset date of February 2, 2002. Tr. 45-46. This application was denied initially and upon reconsideration. Tr. 25-31, 34-38. Mr. Trifilio filed a request for an administrative law judge hearing. Tr. 39. Administrative Law Judge (hereinafter "ALJ") Daniel Piloseno conducted an

administrative hearing on February 10, 2004. Tr. 160-83. Plaintiff appeared with counsel. Id. The ALJ considered the case de novo and on May 27, 2004, denied Mr. Trifilio's SSI claim. Tr. 7-16. The Appeals Council denied a request for review of ALJ Piloseno's decision on September 7, 2004. Tr. 4-7. Mr. Trifilio then commenced this action. While Mr. Trifilio appeared with counsel for the administrative hearing, this appeal was filed pro se.

**2.     Personal & Vocational History**

Mr. Trifilio was born on August 5, 1964. Tr. 45. He obtained his general equivalency diploma in 1992. Tr. 54, 131, 166. He was a delivery person from 1988 to 1993. Tr. 61. He stood and walked throughout the day, drove trucks, and lifted equipment and boxes, frequently weighing 25 pounds. Tr. 62. He was a construction laborer from 1993 to 1997. Tr. 61. He stood and walked throughout the day, lifted up to 100 pounds and frequently lifted 50 pounds. Tr. 63. From 1997 to 1999, he was a taxi driver, seated all day but frequently lifting 25 pounds in luggage or groceries for customers. Tr. 64. From 1999 to 2002, he worked as a cook, standing and walking throughout the day, lifting 10 or 25 pounds frequently, and up to 50 to 100 pounds. Tr. 65-66.

**3.     Medical History**

A. Burn Injuries

1. Blake Medical Center.

On February 2, 2002, Mr. Trifilio presented to Blake Medical Center via the emergency room for burn injuries he suffered as a result of dropping a pot of boiling hot water on his abdomen and right foot and ankle. Tr. 94-106. The attending physician, Dr. Raul Correa, noted that Mr. Trifilio had a second degree burn on his abdomen, and third degree burns on his right foot and ankle. Tr. 95, 98-99. Mr. Trifilio

was examined in consultation by both surgery and plastic surgery. Tr. 95. He was treated with Whirlpool care, Silvadene dressings, and antibiotics to control of infection. Tr. 95, 101. There were no signs of cellulitis and good granulation tissue was present in the wound. Id. Mr. Trifilio would require skin grafting on a separate admission. Id. Upon discharge Dr. Correa reported that Mr. Trifilio was in good condition. Mr. Trifilio was instructed to change his dressings twice a day and given prescriptions for Cleocin, three times daily, Clonidine at bedtime, and Lorcet every four hours as needed. Tr. 95. Dr. Correa noted that plaintiff was morbidly obese and had high blood pressure. Tr. 95-101.

### 2. Manatee County Rural Health Services

On February 13, 2002, Mr. Trifilio was examined by Dr. Abdullah Haider at the Manatee County Rural Health Services clinic. Tr. 112. Mr. Trifilio presented for an evaluation of the burn on his right foot. Id. The burn was not infected and no debridement was done. Silvadene was applied, the area was wrapped, and the patient was prescribed Lortab. Id. Mr Trifilio presented again on February 22, 2002 for more follow-up treatment. Tr. 111. Examination of the foot revealed an extensive deep burn around the ankle. There were ulcers around the ankle, cellulitis and edema. Id. The wounds were dressed with Silvadene. Id. Mr. Trifilio presented a third time on April 23, 2002, complaining of pain, numbness and tingling in his right ankle and back pain. Tr. 108. Mr. Trifilio was examined by Arthur Ball, a physician assistant. Id. Mr. Ball assessed lower back pain, secondary to gait abnormality due to foot pain, status post burn - right foot, parethesias - right leg, and lumbar radiculopathy[1]. Id. Mr. Ball prescribed Lortab and Neurontin, and initiated paperwork to allow Mr. Trifilio to receive follow-up care. Id.

---

[1] "Parethesias" is an abnormal sensation, such as of burning, prickling, tickling or tingling. PDR Medical Dictionary, 1300 (1st ed. 1995)("PDR"). "Radiculopathy" is a disorder of the spinal nerve roots. PDR at 1484.

B. State Agency Medical Consults

1. Dr. Francis L. Klingle - Medical Consultant

On July 3, 2002, Dr. Klingle completed a Residual Functional Capacity ("RFC") Assessment of Mr. Trifilio. Tr. 122-129. The RFC Assessment was for 12 months after the alleged onset date. Id. Dr. Klingle's diagnosis was 2nd and 3rd degree burns of the right foot and a secondary diagnosis of morbid obesity. Tr. 122. Dr. Klingle opined that Mr. Trifilio could occasionally lift 50 pounds, frequently lift 25 pounds, stand/walk for six hours and sit for six hours, with unlimited ability to push and/or pull. Tr. 123. Dr. Klingle observed that Mr. Trifilio is having considerable lower back and right hip pain, secondary to his altered gait related to the painful burn area. Id. He noted that this pain is further aggravated by his obesity, but should improve by February 2003, when his burn and skin grafting is completed. Tr. 124. Dr. Klingle noted that Mr. Trifilio should be able to function within the limitations of his RFC Assessment by February 2003. Id.

2. Dr. A.E. Archibald-Long - Medical Consultant

On September 27, 2002, Dr. Long completed an RFC Assessment of Mr. Trifilio. Tr. 114-121. The RFC Assessment was for 12 months after the alleged onset date. Id. Dr. Long's diagnosis was 2nd and 3rd degree burns of the right foot and a secondary diagnosis of morbid obesity. Id. Dr. Long opined that Mr. Trifilio could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for three to four hours a day, sit for six hours in a day, and have unlimited ability to push and/or pull. Tr. 115. Dr. Long observed that because of his gait difficulty and obesity, Mr. Trifilio has developed lower back pain with severe motor deficits. Id. Dr. Long also noted that Mr. Trifilio's obesity inhibits the claimant's ability to climb stairs, balance, stoop, kneel, crouch or crawl. Id. Dr. Long opined that with continued clinical

4

improvement, the claimant should regain capability to perform past relevant light work by February 2003. Tr. 119.

### 3. HS Systems, Inc. - Rehabilitative Services

On April 24, 2003 and June 26, 2003, Mr. Trifilio underwent screenings at HS Systems, Inc., at the request of the Human Resources Administration for the City of New York. Tr. 152-59. The screenings revealed elevated blood pressure and blood cholesterol. Tr. 153. HS Systems estimated that it would take one to three months of treatment to stabilize the hypertension. Tr. 152. HS Systems, Inc. opined that, as of June 26, 2003, Mr. Trifilio's depressive disorder, morbid obesity, backache, abnormal EKG and hypercholesterolemia were controlled and should not interfere with his ability to work. Tr. 152.

## C. Lower Back Pain

### 1. Doshi Diagnostic Imaging Services

On June 26, 2003 Mr. Trifilio visited Doshi Diagnostic Imaging Services to obtain x-rays of the cervical and lumbar spine in order to diagnose the source of his lower back pain. Tr. 156-57. The x-ray of the cervical spine revealed small bilateral cervical ribs. Tr. 156. The x-ray of the lumbar spine revealed a mild disc space narrowing at L4-L5 and L3-L4. Tr. 157. On September 19, 2003, Mr. Trifilio returned to Doshi Diagnostic to obtain a CT scan of the lumbar spine. Tr. 149-150. The scan revealed the following: mild levoscoliosis[2], central posterior disc bulge suggested at L2-L3 with impression on the thecal sac, left paracentral posterior disc protrusion suggested at L3-L4 with impression on the left lateral recess and intervertebral foramen, a central posterior disc bulge suggested at L4-L5 with impression on the thecal

---

[2] "Levoscoliosis" is a left-sided abnormal lateral curvature of the vertebral column. PDR at 1584.

sac, mild posterior disc bulge suggested at L5-S1, fifth lumbar segment may be a transitional segment, degenerative disc disease at L4-L5. Id. The radiologist noted that the patient's marked obesity significantly decreased the sensitivity of the exam. Tr. 150.

### D. Psychological Consults

#### 1. John T. Super, Phd. - Consulting Psychologist

On October 16, 2002, John T. Super, Ph. D., conducted a consultative psychological examination. Tr. 130-33. Mr. Trifilio appeared older than his chronological age of thirty-eight. Tr. 132. He dressed casually, had good hygiene and was clean. Tr. 132. He interacted in a friendly manner. His eye contact was appropriate. Mr. Trifilio's speech productivity was high; his speech quality was normal. Tr. 132. His gait was slow and he favored his right leg. Id.

Mr. Trifilio did not present any mental symptoms that suggested psychotic processes. Tr. 132. He was alert and oriented. He recalled five out of five items immediately and three out of three items after five minutes. Tr. 132. Mr. Trifilio correctly stated the name of the President and his most recent predecessor and the name of the governor of Florida. He was able to do simple addition and subtraction but not multiplication. Tr. 132. He could not abstract "one hand washes the other" but he drew similarities. Mr. Trifilio's mood was dysphoric. Features of depression appeared mild and included weight gain. Tr. 132. Features of anxiety appeared mild and included worry. Id. Mr. Trifilio reported having gained 75 pounds since his injury and feeling depressed and anxious. Tr. 133. There were no features of mania. Tr. 132. Mr. Trifilio's thought processes were logical and coherent and devoid of delusions. His mental speed was normal, and he did not report any perceptual disturbances. Mr. Trifilio's impulse control, judgment and insight appeared adequate. Tr. 132.

Mr. Trifilio stated that he did not do any cleaning, shopping or cooking. Tr. 133. He had a valid driver's license and stated he could use a telephone, telephone directory, dictionary and post office. Tr. 133. Mr. Trifilio's verbal communication appeared adequate. He reported having a strained relationship with his girlfriend. He followed multi-step commands consistently and accurately. Tr. 133.

Dr. Super diagnosed adjustment disorder with mixed anxiety and depressed mood, on Axis I, deferred diagnosis on Axis II, and status post slip and fall, with burn injury on right lower extremities and hypertension on Axis III. Tr. 133. Dr. Super concluded that Mr. Trifilio appeared competent to manage his own funds. Tr. 132.

### 2. Michael R. Stevens, Phd. - Consulting Psychologist

On October 3, 2002, State agency medical consultant, Michael Stevens reviewed Dr. Super's report and concluded that plaintiff did not have a severe mental impairment. Tr. 134-47. Dr. Stevens diagnosed Mr. Trifilio with adjustment disorder with depressed and anxious mood, mild anxiety and depression. Tr. 146.

**4.    The Administrative Hearing**

A. Plaintiff's Testimony

An administrative hearing was held on February 10, 2004. Tr. 160-183. Mr. Trifilio, who was represented by an attorney, testified at the hearing. Id. Mr. Trifilio testified that he spilled hot water on his foot on February 2, 2002. Tr. 167. He also testified that he still needs plastic surgery on his foot. Tr. 168. He testified that he can only slightly put his weight on his foot and that he has problems sitting because of herniated discs in his back. Id. Mr. Trifilio testified that he still feels pain in the area where he was burned, and that the pain bothers his sleep at night. Tr. 169. He describes the pain as a "pins and needles"

type feeling. Id. He testified that he was five foot ten inches and weighed 450 pounds. Tr. 170. He testified that he walks with a cane and can stand in one place for 15 to 20 minutes, after which he experiences pain running down his left knee and leg, because he puts all his weight on his left side. Tr. 171. He stated that he took Percocet, Celebrex, Tylenol #3, Tripotal, Wellbutrin, Cyprexia, and Lexapro, and that these medications caused him to be drowsy during the day. Tr. 173. Mr. Trifilio claimed that he slept eight hours during the day, in addition to sleeping at night. Tr. 174. He stated that he sees a psychiatrist for depression. He stated that he could bathe and dress himself, but needed help putting on his socks. He spent his days watching television and did no household chores. Tr. 175-76.

### B. William Robert Harvey - Vocational Expert

Upon the conclusion of Mr. Trifilio's testimony, the ALJ examined Mr. Harvey, the vocational expert, and asked him to hypothetically consider an individual of Mr. Trifilio's age, education and work experience, who could do light work with the following limitations: need to have a sit/stand option at his own discretion, including the ability to take a few steps away from his work station; inability to balance, climb, stoop, crouch, kneel, crawl, or push, pull or operate foot controls with his right foot or leg; and inability to have concentrated exposure to unprotected heights, vibrations or uneven terrain. Tr. 177-80. The vocational expert responded that such an individual would not be able to complete Mr. Trifilio's past relevant work. Tr. 179. However, the vocational expert further responded that such an individual would be able to perform certain other work that exists in significant numbers in the national economy, including, the job of merchandise marker, of which there were 400 locally, 3,000 state wide and 55,000 nationally; arcade attendant, of which there were 200 locally, 2,000 state wide and 30,000 nationally; and small products assembler, of which there were 1,200 locally, 7,000 state wide and 255,000 nationally. Tr. 179-

80. The ALJ also asked Mr. Harvey if there was work available in the national economy for an individual with the additional limitation of requiring two extraordinary workday breaks of a minimum of 15 minutes each, to rest due to fatigue and pain. Mr. Harvey said that no such work exists. Tr. 181.

**5.     The ALJ's Decision**

The ALJ found that Mr. Trifilio has not engaged in substantial gainful activity since his alleged onset date. Tr. 10. The ALJ found that the medical evidence indicated that Mr. Trifilio has a right foot third degree burn, degenerative disc disease - lumbar spine, obesity, hypertension, and adjustment disorder with anxiety and depression, impairments that are "severe" within the meaning of the Social Security Regulations, but not "severe" enough to meet, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 10-11.

The ALJ reviewed the medical evidence pertaining to the right foot third degree burn, the psychological evaluations, and the treatment for back pain. Tr. 11-12. The ALJ also reviewed the residual functional capacity assessments of Mr. Trifilio completed by consulting physicians of the State Agency. Tr. 12. The RFC assessments found that the claimant could perform work-related activities with lifting and/or carrying up to 20 pounds occasionally, frequently carrying or lifting ten pounds, sitting, standing or walking about six hours each day during an eight hour workday, and unlimited pushing and pulling. Tr. 12. The ALJ found that these RFC opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with the other substantial evidence and therefore, the ALJ found that the opinions were entitled to substantial weight. Tr. 12. The ALJ discredited the testimony from Mr. Trifilio that he could stand for 15-20 minutes, sit for one-half hour maximum before he gets pain in his lower back, and that he sleeps 18 hours a day, stating that no clinical

9

records support the limitations. Otherwise, the ALJ found Mr. Trifilio's testimony generally credible. Tr. 13.

The ALJ then considered whether Mr. Trifilio retained the residual functional capacity to perform the requirements of his past relevant work or other work existing in substantial numbers in the national economy. Id. The ALJ found that Mr. Trifilio retained a residual functional capacity for a limited range of light work. Id. The ALJ considered the testimony of William Harvey, the vocational expert who testified at the hearing. Tr. 14. Mr. Harvey opined that Mr. Trifilio could not return to his past relevant work. Id. However, Mr. Harvey testified that work existed in substantial numbers in the national economy that an individual with Mr. Trifilio's limitations could perform. Id. Those jobs included merchandise marker, arcade attendant, and small products assembler. Id.

The ALJ also stated that he carefully considered Social Security Ruling 02-1p, which discusses obesity and its potential for causing or contributing to other impairments, such as musculoskeletal, respiratory, and cardiovascular system problems. Tr. 12-13. The ALJ found that the medical evidence established that obesity was a severe impairment in this case because it does cause significant functional limitations. Id.

The ALJ concluded that based upon Mr. Trifilio's age, educational background, work experience, and residual functional capacity, Mr. Trifilio is capable of making a successful adjustment to work that exists in significant numbers in the national economy. Id. The ALJ thus arrived at a finding of "not disabled" within the framework of Medical-Vocational Rule 202.21. Tr. 15. He concluded that Mr. Trifilio was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. Id.

**6.**     **Decision of the Appeals Council**

On September 7, 2004, the Appeals Council considered the request for review of the ALJ's decision issued on May 27, 2004. Tr. 2-4. The Appeals Council concluded that there was no basis under the relevant regulations for granting the request for review. Id. Accordingly, the request for review was denied, and the ALJ's decision stands as the final decision of the Commissioner of Social Security in this case. Id.

## DISCUSSION

The Commissioner contends that the ALJ applied the correct legal standard in reaching his decision and that the ALJ's decision is supported by substantial evidence, and, therefore, should be affirmed.

### 1. The Scope of Review

When reviewing the Commissioner's denial of SSI benefits, a district court must first examine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal."). Next, the district court must determine whether the Commissioner's conclusions are supported by "substantial evidence." Tejada, 167 F.3d at 773; see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

The Supreme Court has defined the "substantial evidence" standard to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "In determining whether substantial evidence supports a finding of the [Commissioner], the court must not look at the supporting evidence in isolation, but must view it in light

of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 711 F. Supp. 1339, 1351 (S.D.N.Y. 1991). In making this determination, a district court must defer to the ALJ's resolution of any conflicting evidence. Clark v. Commissioner, 143 F.3d 115, 118 (2d Cir. 1998).

**2.     SSI Disability Determinations**

   *A.     Statutory Definitions and Requirements*

SSI benefits are available to anyone who meets the statutory income and resource requirements of 42 U.S.C. §§ 1382a and 1382b, respectively, and who is deemed "disabled," as that term is defined in 42 U.S.C. § 1382c (West Supp.). There is no question here that Mr. Trifilio satisfies the applicable statutory income and resource requirements; the only question, therefore, is whether he is disabled as that term has been defined by 42 U.S.C. § 1382c.

For the purposes of SSI, a person is deemed "disabled" when:

> he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A) (West Supp. 1997). Nonetheless,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. at § 1382c(a)(3)(B).

The statute defines a "physical or mental impairment" as:

an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic technique.

Id. at § 1382c(a)(3)(D). The statute also directs that the combined effect of multiple impairments should be taken into consideration by the Commissioner in determining whether or not a particular claimant is "disabled":

> In determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

Id. at § 1382c(a)(3)(G).

### B. *The Five-Step Disability Determination Process*

The Commissioner determines whether a claimant meets the definition of "disabled" in five, successive steps. See 20 C.F.R. § 416.20; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). These steps may be summarized as follows:

(1) Is the claimant gainfully employed? If he is, then he is not disabled. If he is not, then the analysis proceeds to the second step.
(2) Does the claimant have a "severe" impairment(s) (i.e., one that significantly limits his physical or mental ability to do basic work activities)? If he does not, then he is not disabled. If he does, then the analysis proceeds to the third step.
(3) Does the claimant's impairment(s) meet or equal a "listed impairment"? If it does not, then the analysis proceeds to the fourth step. If it does, then the claimant is disabled.
(4) Does the claimant's impairment(s) prevent him from doing his "past relevant work"? If it does not, then he is not disabled. If it does, then the analysis proceeds to the fifth and final step.
(5) Does the claimant's impairment(s), considered in conjunction with his residual functional capacity, age, education, and past work experience, prevent him from engaging in other substantial gainful work reasonably available in the national economy? If it does not, then he is not disabled. If it does, then he is disabled.

Thus, one can only be deemed "disabled" at the third and fifth steps of the determination, whereas one can be deemed "not disabled" at every step except the third one.

"The burden of proving disability is on the claimant[;]...[h]owever, once the claimant has established a prima facie case that his impairment prevents his return to his prior employment [step four], it then becomes incumbent on the [Commissioner] to show that there exists alternative substantial gainful work in the national economy which the claimant could perform, considering his physical capability, age, education, experience and training." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citations omitted). The Second Circuit has described the Commissioner's burden as twofold. "First, he must show that 'the claimant's impairment is of a kind that still permits certain types of activity, such as lifting or walking, necessary for other occupations, and that the claimant's experience involves skills transferable to other work." Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983) (quoting Decker v. Harris, 647 F.2d 291, 294 (2d Cir. 1981). The Commissioner must then prove "the existence in the national economy of jobs suited to the claimant's physical and vocational capabilities." Id.

### **3.** **The ALJ Failed to Properly Evaluate Plaintiff's Subjective Complaints of Pain.**

The ALJ is required to consider plaintiff's subjective complaints of pain and other symptoms in determining disability, but has the discretion "to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology." Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995). "A claimant who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but the applicable regulations do require "medical signs and laboratory

findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain." Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). If the medical evidence shows such an impairment, then the intensity and persistence of the claimant's symptoms must be evaluated so that a determination may be made regarding how the claimant's symptoms limit his or her capacity for work. 20 C.F.R. § 404.1529(c). "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective evidence alone," the ALJ may not reject a claimant's statements about the intensity and persistence of his or her symptoms or about the effect of the symptoms on his or her ability to work solely because the available objective medical evidence does not substantiate the claimant's statements. Id.

When assessing the credibility of a claimant's subjective complaints, the adjudicator of fact should consider the following factors:

    1. The individual's daily activities;
    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96-7p 61 Fed. Reg. 34,483, 34,486 (July 2, 1996).

Although the ALJ has the discretion "to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the

symptomatology," Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995), if "the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citations omitted). The regulations indicate that subjective testimony of impairment and pain is credible when supported by objective medical evidence and other evidence. 20 C.F.R. §§ 416.929(a), (c)(4). In addition,

> [i]t is not sufficient for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that the "allegations are (or are not) credible.". . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p.

The only specific reason given by the ALJ for rejecting Mr. Trifilio's subjective complaints of pain was that "[t]here are no clinical records to show or document the limitations that claimant reported." Tr. 13. The record, however, does contain medical records that indicate that Mr. Trifilio suffers from (1) lumbar spine disc hernias that are likely to cause back pain, (2) morbid obesity, (3) pain along his legs resulting from the third degree burn accident, and (4) frequent drowsiness due to the vast amount of pain medication prescribed to him. Mr. Trifilio testified that he suffered from pain that feels like "pins and needles" in the right foot where he was burned. Tr. 169. He also testified that he can only stand in one place for 15 to 20 minutes, after which he experiences pain running down his left knee and leg, because

16

he puts all his weight on his left side. Id. He also testified that he cannot sit longer than a half an hour because of pain from his lower back. Id. These symptoms are corroborated by Mr. Arthur Ball, a physician assistant from Manatee County Rural Health Services, who diagnosed parethesias, Tr. 108, and by an objective CT scan of the lumbar spine showing degenerative disc disease at L4-L5, disc bulges or protrusions suggested at L2-L3, L3-L4, L4-L5, and L5-S1. Tr. 156-57. Additionally, many doctors that examined Mr. Trifilio diagnosed morbid obesity, which can contribute to the claimant's lower back pain. Moreover, Mr. Trifilio testified that he requires frequent naps during the day because of the drowsiness caused by the pain medication which he consumes. Tr. 170. While the severity of Mr. Trifilio's limitations may be subject to review, the evidence does tend to show that a medical basis exists for the presence of these limitations. Under these circumstances, the ALJ should not have summarily rejected Mr. Trifilio's subjective complaints on the ground that they were not credible.

Even though the ALJ could have "consider[ed] his . . . own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements," Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (quoting Social Security Ruling 96-7p), the ALJ should have "consider[ed] all of the evidence presented, including information about [Mr. Trifilio's] prior work record." 20 C.F.R. § 416.929(c) (2003). Indeed, a good work history may be deemed to support a claimant's credibility. Schaal, 134 F.3d at 502. Mr. Trifilio worked various labor-intensive jobs for 14 years. Tr. 61. The ALJ should have acknowledged Mr. Trifilio's long work record, as well as the consistency of his allegations with the objective medical evidence presented when weighing the credibility of Mr. Trifilio's allegations of pain.

Accordingly, this case must be remanded so that the ALJ may properly evaluate Mr. Trifilio's

17

subjective complaints of pain and provide his "reasoning in a manner that enables this Court to perform effective review." Lugo v. Apfel, 20 F.Supp.2d 662, 663 (S.D.N.Y. 1998) (remanding because the ALJ's conclusory statements that the plaintiff's subjective complaints of pain were not credible to the extent alleged left the court "no basis on which to determine whether the proper factors were considered and the appropriate legal standards applied").

**4.** **Duty to Develop the Record**

The non-adversarial nature of disability benefits hearings impresses on the ALJ an affirmative duty to develop an evidentiary record that is complete and fair. See Sims v. Apfel, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). It is the responsibility of the ALJ to make every attempt to obtain additional evidence, re-contact treating sources, and make sure all the evidence represents a completed file from which he can reach his decision. See 20 C.F.R. § 416.927 (c)(3). In this case, the ALJ did not fulfill his duty because (1) he relied on residual functional capacity assessments that were between one and one-half to two years old, and (2) there were no consultative physician examinations that considered the effect of Mr. Trifilio's morbid obesity on his residual functional capacity or the combined effects of obesity and lower back pain on his residual functional capacity. The ALJ relied heavily on the September 2002 RFC Assessment conducted by Dr. Long. Dr. Long stated that "because of his current gait difficulty and obesity, [Mr. Trifilio] has developed lower back pain with severe motor deficits, claimant is 5'9" and 380 pounds." Tr. 115. This RFC Assessment was conducted almost two years ago and at a time when the claimant weighed 380 pounds. At the time of the hearing, Mr. Trifilio weighed 450 pounds. The determination of Mr. Trifilio's exertional limitations and ability to perform light work may have changed due to the altered

physical state of the claimant. A more up-to-date RFC Assessment should be sought by the ALJ to properly develop the record in this case.

Furthermore, since the February 2002 accident, Mr. Trifilio's obesity condition has consistently deteriorated[3]. Thus, on remand, the ALJ is instructed to seek a consultative physician examination to consider the combined effect of claimant's obesity and his other impairments on Mr. Trifilio's residual functional capacity.

## CONCLUSION

The case is remanded to the Commissioner for further consideration consistent with this opinion. The Commissioner should be instructed to address the following issues: (1) the Commissioner should give proper consideration to plaintiff's subjective complaints in light of the medical evidence and provide detailed reasons for all credibility determinations, and (2) seek a consultative examination by a physician considering Mr. Trifilio's obesity, and the combined effect of his obesity and other impairments on his residual functional capacity.

**SO ORDERED.**

Brooklyn, New York
December 20, 2005

_____S/_____
Edward R. Korman
United States District Judge

---

[3] Mr. Trifilio weighed 280 pounds shortly after his accident in February 2002. At the ALJ hearing, he testified that he weighed 450 pounds. Tr. 170.